**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| ARMSTRONG RICHMOND ) <br> PROPERTIES LLC ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TALAGI, INC., ) <br> ) <br> Defendant. ) | Case No.: 3:24-cv-779 |

## PLAINTIFF'S COMPLAINT FOR DAMAGES

Plaintiff Armstrong Richmond Properties LLC ("Armstrong"), by counsel, for its complaint against defendant Talagi, Inc. alleges and states:

### THE PARTIES

1. Plaintiff Armstrong is an Indiana limited liability company with its principal place of business in Marion County, Indiana and owning real property located at 1302 Industrial Drive, Mishawaka, Lake County, Indiana (the "Property").

2. Defendant Talagi, Inc. is an Indiana corporation with its principal place of business in St. Joseph County, Indiana.

### JURISDICTION AND VENUE

3. This Court has personal jurisdiction over the parties because the parties conducted business in Indiana and the actions giving rise to this complaint took place in Indiana and caused harm to Armstrong.

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 and 42 U.S.C. § 9613(b).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 9613(b).

## NATURE OF THE CASE

6. This lawsuit asserts claims under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607(a)(4)(B) *et seq*. ("CERCLA"), for response costs incurred and to be incurred by Armstrong in responding to the release of hazardous substances which pose a risk to human health and the environment.

## SITE OPERATIONS

7. Talagi acquired the Property in 1983 and began operating a plating operation at the Property under the business name Baycote Metal Finishing, Inc. ("Baycote").

8. Under the name Baycote, Talagi electroplated and anodized steel and steel casings with zinc, cadmium, and chromium for the automotive, recreational vehicle, and trailer industries.

9. As part of these operations, Talagi used substantial amounts of hexavalent chromium, trichloroethene ("TCE"), tetrachloroethene ("PCE"), arsenic, cadmium, carbon disulfide, toluene, and per- and polyfluoroalkyl substances ("PFAS").

10. Talagi's electroplating and metal dipping operations suffered sudden and accidental spills and disposals of hazardous substances at the Property.

11. For example, on April 21, 1990, an ex-employee of Talagi sent a letter to the Mishawaka Fire Department outlining various incidents on the Property. (Exhibit A, Indiana Department of Environmental Management Virtual File Cabinet ("IDEM VFC") #48126994).

12. The Mishawaka Fire Department later reported the complaint to the IDEM Office of Solid and Hazardous Waste. *Id.*

13. Among the incidents that the ex-employee reported was that on or about January 2, 1990, a frozen water pipe thawed and started pouring water into a chrome plating tank. *Id.*

14. The tank had approximately 1,000 gallons of chrome plating solution. *Id.*

15. As a result of the water entering into the tank, the tank's contents overflowed onto the floor, under the outside walls, across the parking lot, and into the parking lot's dry wells. *Id.*

16. That same complaint stated that there was a release to the sub-surface from Talagi's plating lines, that chrome was released to the air, and that there were various drains throughout the Property that were likely acting as disposal conduits to the sewers for other wastes. *Id.*

17. Further, an April 1998, IDEM Waste Inspection Report confirmed Talagi's use of chlorinated solvents at the Property. (Exhibit B, p. 3, IDEM VFC #32409386).

18. That report stated that IDEM waste sampling reported 22,000 ppm of total halogens (chlorinated solvents) in waste oil from Talagi's operations. (*Id.*, p. 3).

19. Talagi also used wetting agents at the Property, which contained the PFAS chemical perfluorooctane sulfonic acid ("PFOS").

20. For example, an October 2000, IDEM letter stated that Talagi used a wetting agent as part of the chrome plating bath operations. (Exhibit C, IDEM VFC #37338253).

21. A September 2002, Air Permit further confirmed that Talagi continued the use of a PFOS containing wetting agent (Fumetrol 140) to lower surface tension in the chrome bath. (Exhibit D, IDEM VFC #37338918 pgs. 10, 55).

22. Talagi ceased its operations at the Property in 2003.

### TALAGI'S OPERATIONS CAUSED THE CONTAMINATION

23. Talagi's operations led to the disposal of hazardous substances at the Property which caused the contamination of the Property.

24. A limited subsurface investigation was performed on the Property in 2014 that included the collection of soil and groundwater samples.

25. This investigation showed concentrations of volatile organic compounds, polynuclear aromatic hydrocarbons, and metals, including hexavalent chromium, that exceeded the Indiana Department of Environmental Management ("IDEM") Remediation Closure Guide screening levels in soil and groundwater.

26. The contamination at the Property persisted as Armstrong acquired the Property.

27. Armstrong had Phase I Environmental Site Assessments ("Phase I ESA") performed as part of its acquisition of the various parcels to qualify as a Bona Fide Prospective Purchaser under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") § 101 (40), 42 U.S.C. § 9601 (40).

28. The 2016 Phase I ESA described contamination to groundwater with TCE and hexavalent chromium from the previous business operations at the Property, with no documentation found relating to remediation of groundwater conditions.

29. The 2016 Phase I ESA also discovered the Property's soil had been contaminated by PCE contamination.

30. Subsequent testing has confirmed that the Property is contaminated with PFAS.

31. On September 1, 2023, testing at the Property confirmed that PFAS, including PFOS, was present in soil at the Property at 14 parts per billion, almost 14 times reporting limits.

32. On September 1, 2023, testing at the Property confirmed that PFAS, including PFOS, was present in groundwater at the Property at 2,600 nanograms per liter, more than 130 times reporting limits and 65 times IDEM screening levels.

33. The hazardous substances released from and disposed of by Talagi at the Property poses a risk to human health and the environment.

34. TCE is a chemical used, among other things, for metal cleaning and vapor degreasing operations. The United States Environmental Protection Agency ("USEPA") classifies chemicals like TCE as carcinogenic to humans.

35. Tetrachloroethene is also known as perchloroethylene, tetrachloroethylene, PCE, and Perc. PCE, like TCE, is a chemical used in metal cleaning and vapor degreasing operations. The USEPA has classified PCE as a hazardous substance and a suspected human carcinogen.

36. Hexavalent chromium is one of the valence states of the element chromium. It is usually added to alloy steel to increase hardenability and corrosion resistance. The USEPA classifies hexavalent chromium as carcinogenic to humans.

37. PFAS, including PFOS, is used, among other things, as a wetting agent for metal plating operations. USEPA classifies PFAS as a suspected carcinogen to humans and a cause of increases in cholesterol levels, pregnancy-induced hypertension and preeclampsia, lower antibody response to vaccines, and increases in cholesterol levels.

38. The identification and remediation of TCE, PCE, hexavalent chromium, and PFAS are essential to protect human health and the environment.

39. Since the discovery of the contamination, Armstrong has borne, and will continue to bear, environmental response costs to address the contamination, including expenses necessary to remove and remediate the contamination.

40. Through this action, Armstrong seeks to recover its past and future environmental response costs, incurred as a result of Talagi's contamination, attorneys' fees and court costs associated with this action.

## CLAIM FOR RELIEF

### Comprehensive Environmental Response, Compensation, and Liability Act

41. Armstrong incorporates by reference paragraphs 1 through 40 above as though fully set forth herein.

42. 42 U.S.C. § 9607(a)(4)(B), commonly referred to as CERCLA Section 107, reads as follows:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section-
>
> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other part or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for-
>
> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan (…)

43. 42 U.S.C. § 9601(9) reads: "The term 'facility' means (A) any building, structure, installation, equipment, pipe or pipeline … or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located."

44. 40 CFR § 304.12 (m) reads: "Potentially responsible party or PRP means any person who may be liable pursuant to section 107(a) of CERCLA, 42 U.S.C. 9607(a), for response costs incurred and to be incurred … not inconsistent with NCP."

45. The Property is a facility pursuant to 42 U.S.C. § 9601(9).

46. Talagi owned and operated the Property at a time when TCE, PCE, hexavalent chromium, and PFAS—each hazardous substances—were disposed of at the Property.

47. Talagi released and disposed of hazardous substances into the subsurface soil and groundwater at the Property through its release and disposal of TCE, PCE, hexavalent chromium, and PFAS—each hazardous substances—at the Property and is therefore a Potentially Responsible Party as defined in 40 CFR § 304.12(m).

48. Talagi's release from and disposal at the Property has caused Armstrong to incur, and Armstrong will continue to incur, response costs that are necessary and consistent with the National Contingency Plan.

49. For instance, Armstrong is characterizing the contamination created by Talagi's release and disposal of hazardous substances from the Property. Armstrong has incurred costs that include the characterization of TCE, PCE, hexavalent chromium, and PFAS at the Property, though much more work remains necessary.

50. Talagi is jointly and severally liable to Armstrong for all costs Armstrong has incurred and will incur as a result of the subsurface soil and groundwater contamination at and around the Property.

## Prayer for Relief

WHEREFORE, Armstrong respectfully requests that the Court:

a. Enter judgment in favor of Armstrong, and against Talagi;

b. Order Talagi to pay Armstrong all response costs incurred and to be incurred by Armstrong addressing the release and disposal of the hazardous substance contamination from the Property that are necessary and consistent with the National Contingency Plan;

c. Declare that Talagi is obligated to pay all response costs incurred and to be incurred by Armstrong addressing the release and disposal of the hazardous substance contamination from the Property that are necessary and consistent with the National Contingency Plan ; and

d. Award Armstrong all further relief that is just and proper including prejudgment interest at Indiana's statutory rate of eight percent on all covered, but unreimbursed, past costs.

Respectfully submitted,

*[s] David L. Guevara*
David L. Guevara, Atty. No. 26388-49
John F. Huldin, Atty. No. 35258-49
Zakariah A. Kulam, Atty. No. 36874-45
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Telephone: (317) 713-3500
Email: dguevara@taftlaw.com
           jhuldin@taftlaw.com
           zkulam@taftlaw.com

*Counsel for Plaintiff*